UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS RAY HUGILL,<br><br>          Petitioner,<br><br>v.<br><br>JOHANNA SMITH,<br><br>          Respondent. | Case No. 1:08-cv-00314-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

      Earlier in this matter, the Court granted in part Respondent's Motion to Dismiss (Dkt. 36) because Petitioner's claims are procedurally defaulted. The Court conditionally denied the motion in part to give Petitioner an opportunity to show that the cause and prejudice or miscarriage of justice exceptions should be applied to his case. Petitioner has been provided with an additional part of the state court record (Dkt. 48), and has filed his Response to the Court Order (Dkt. 49).

      Having reviewed the parties' briefing, the record in this matter, and the state court record, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

# CAUSE AND PREJUDICE AND MISCARRIAGE OF JUSTICE

## 1.  Background

In his state appellate brief, Petitioner summarized the history of his case as follows:

> Mr. Hugill [Petitioner] was charged with aggravated battery and burglary. (R., pp. 5-6.) Regarding the aggravated battery charge, the Information alleged that Mr. Hugill committed a battery and caused great bodily harm upon Todd McBride. (R., p. 5.) Mr. Hugill proceeded to trial, but the jury was deadlocked and unable to return a verdict. (R., p. 61.) Mr. Hugill subsequently entered an Alford plea to the aggravated battery charge. (R., pp. 90-91.) Mr. Hugill then moved to withdraw his plea, asserting that he maintained his innocence at the change of plea hearing by admitting only that there were facts sufficient to support a conviction, and that he was under the influence of medication that clouded his judgment at the time he entered his plea. (R., pp. 96-99.) The district court denied the motion. (Tr., p. 63, L.1.) The district court imposed a unified sentence of thirteen years, with five years fixed. (R. pp. 118-120.) Mr. Hugill timely appealed. (R., p. 124.)

(State's Lodging D-23.)

The Idaho Court of Appeals affirmed the district court's denial of the motion to withdraw the guilty plea. (State's Lodging B-5 .) Petitioner filed a petition for review with the Idaho Supreme Court, which was denied on September 22, 2006. (Petition, Dkt. 3 at 3.)

Petitioner filed a state post-conviction application on May 14, 2007. (State's Lodging D-1.) During Petitioner's post-conviction matter, the Court appointed new conflict counsel, John Stosich, to represent Petitioner. At the time of the first hearing on the State's motion for summary dismissal, Mr. Stosich had not filed a notice of

appearance and had not received notice of the hearing. As a result, the hearing was vacated and reset to November 2, 2007. (State's Lodging, D-21.) Mr. Stosich attended and argued on behalf of Petitioner at the November 2, 2007 hearing.

At the November 2 hearing on the motion to dismiss the post-conviction application, the State argued that (1) Petitioner had already made substantially the same argument in his prior motion to withdraw his guilty plea, (2) the state courts had found Petitioner had presented insufficient evidence to support a claim that he was incompetent based on his prescription medication argument, and, (3) as a result, Petitioner could not reassert the same argument on post-conviction review. (State's Lodging D-36.) At the end of oral argument, Judge Joel Tingey concluded:

> I think I'm constrained to follow what's already happened both in district court and on the Court of appeals. That issue's been addressed. I don't think it's appropriate to be addressed again on a post-conviction petition. So on that basis the Court will grant the motion for summary dismissal.

(State's Lodging D-36 at 8.)

Here, Petitioner alleges that his attorney, Mr. Stosich, did not give him notice of the November 2, 2007 motion to dismiss hearing, either before or after the hearing. On November 7, 2007, Judge Tingey entered an order granting the motion for summary dismissal. (State's Lodging D-26.) Because Petitioner had not received either the notice or the order of dismissal, he filed a motion to expedite the post-conviction hearing on December 19, 2007, stating "Petitioner has tried on several occasions to contact Court Appointed Counsel to No avail." (State's Lodging D-27.) He also filed a document

entitled "Petition and Affidavit for Post Conviction Relief and Amend to Post Conviction." (State's Lodging D-28.)

On April 3, 2008, Petitioner filed a response to the motion to dismiss. (State's Lodging D-32.) On May 27, 2008, Petitioner wrote to the court requesting a reporter's transcript of the hearing. (Dkt. 49 at 23.) On June 2, 2008, the court reporter wrote to Petitioner stating that the court reporter had informed Mr. Stosich to send Petitioner a copy of the transcript, and the court reporter thought Petitioner had received a copy. The court reporter provided Petitioner with a new copy, writing, "It would be easier for me to just go ahead and send a free copy of the transcript to you, which is not the way it's normally done, rather than hassle with trying to get Mr. Stosich to send you a copy. That is **HIS** job as your attorney to deal with any concerns or requests that you have." (Dkt. 49 at 23, emphasis in original.)

On June 8, 2009, Judge Tingey issued an order stating that Petitioner's pro se petition filed on December 19, 2007, would be considered a motion to reconsider, and that the motion would be denied because it was filed too late. (State's Lodging D-35.) The petition remained dismissed as of November 7, 2007. No appeal was filed because of Petitioner's late notice of the state district court dismissal.

Petitioner filed his federal Petition for Writ of Habeas Corpus (this case) on August 1, 2008. The action was previously stayed to permit Petitioner to complete his final state post-conviction action, described above. After dismissal of that action, Petitioner filed an Amended Petition and this case was re-opened on December 8, 2009.

**MEMORANDUM DECISION AND ORDER - 4**

Upon review of Petitioner's Amended Petition, the Court dismissed three of Petitioner's claims for the following reasons: (1) the Second Amendment right to bear arms is not implicated by Petitioner's participation in a presentence investigation; (2) the Ninth Amendment does not provide for an independent cause of action;[1] and (3) the Eighth Amendment applies only after conviction, and, further, the Eighth Amendment is not implicated by Petitioner's participation in a presentence investigation after conviction.[2]

On March 29, 2010, Respondent filed a Motion to Dismiss, contending that all of Petitioner's remaining claims are procedurally defaulted. Respondent characterizes Petitioner's claims as follows: (1) ineffective assistance of trial counsel for failing to advise Petitioner of his constitutional rights, specifically, the right to have a competency hearing; (2)(a) lack of a competency hearing because the trial court allegedly knew Petitioner was under a doctor's care and was placed on medication by the county jail prior to trial that was different from his medication from the doctor; (2)(b) Petitioner's trial attorney failed to seek a psychiatric evaluation of Petitioner; (3) Petitioner's trial counsel was ineffective for failing to advise Petitioner of his Fifth Amendment rights and right not to participate in a pre-sentence investigation; (4) Petitioner's plea was not knowing and voluntary because he was taking medication at the time he pleaded guilty; and (5) trial

---

[1] In *Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986) (civil rights context), the Ninth Circuit held that "the Ninth Amendment has not been recognized to independently secure any constitutional right." *Id*. at 748.

[2] *Graham v. Connor*, 490 U.S. 386, 393 & n. 6 (1989).

**MEMORANDUM DECISION AND ORDER - 5**

counsel was ineffective for not advising the trial court that Petitioner could not plead guilty because of his use of medications. The Court previously determined that all of these claims are procedurally defaulted because none was presented to the Idaho Supreme Court. (Dkt. 44.)

2.      **Standard of Law Governing Cause and Prejudice Exception to Procedural Default Bar**

If a petitioner's claim is procedurally defaulted, the federal district court cannot hear the merits of the claim unless a petitioner meets one of two exceptions: a showing of adequate legal cause for the default and prejudice arising from the default; or a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

A petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551

(1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, any errors of his counsel during the post-conviction action cannot serve as a basis for cause to excuse Petitioner's procedural default of his claims. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("a petitioner cannot claim constitutionally ineffective assistance of counsel in [post-conviction] proceedings").

If a petitioner points to an instance of ineffective assistance of counsel during direct appeal that prevented the petitioner from properly exhausting his claims for "cause" in a "cause and prejudice" argument, he cannot rely on that instance unless he has first exhausted that particular ineffective assistance of counsel claim. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (ineffective assistance of counsel cannot serve as cause for the default of another claim unless the ineffective assistance of counsel claim is not itself procedurally defaulted or cause and prejudice for the default of the ineffective assistance claim can be shown).

3. **Cause and Prejudice Discussion**

The state court record shows that Petitioner did not receive adequate notice of the post-conviction hearing on the motion to dismiss or of the subsequent dismissal of the post-conviction petition from Petitioner's counsel. As a result, Petitioner was unable to file a timely appeal in the state post-conviction matter. It was Petitioner's attorney's job to give Petitioner notice of the hearing and dismissal. Unfortunately, a petitioner does not have a federal constitutional right to effective assistance of counsel during state post-

conviction proceedings; hence, any errors of counsel during the post-conviction action cannot serve as a basis for cause to excuse Petitioner's procedural default of his claims. *See Coleman v. Thompson*, 501 U.S. at 752.

Respondent also notes in her Reply that, if any of Petitioner's arguments can be construed to place blame for the default of any of Petitioner's claims on trial counsel, such a claim of ineffective assistance has never been brought before the Idaho Supreme Court. As a result, such a claim is procedurally defaulted itself, and one procedurally-defaulted claim cannot function as cause for another procedurally defaulted claim. The Court agrees with this analysis.

In conclusion, because Petitioner cannot show any circumstances amounting to adequate cause to excuse the procedural default of his claims in state court, the Court cannot adjudicate the merits of the claims.

4.     **Standard of Law Governing Miscarriage of Justice Exception to Procedural Default**

Petitioner next argues that he was innocent of the burglary and aggravated battery charges. If a petitioner cannot show cause and prejudice, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To show a miscarriage of justice, Petitioner must make a colorable showing of

factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995). Where the defendant pleaded guilty and did not have the evidence in his case evaluated by a jury, the petitioner must show that, based on all of the evidence, "it is more likely than not that no reasonable juror would have found Petitioner guilty. . . ." *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001) (citation omitted).

5.      **Discussion of Miscarriage of Justice**

Petitioner first argues that he was innocent of the burglary charges because he actually lived at the apartment of his girlfriend, Rose Birch, where he was accused of breaking, entering, and beating Todd McBride. The record reflects that Todd was the boyfriend of Rose's mother, Teresa Jarvis, and that both Todd and Teresa lived in Rose's apartment. Even if it were true that Petitioner lived with Rose, Teresa, and Todd in the apartment,[3] showing he could not have burglarized his own home, Petitioner also needs to

---

[3] Petitioner points to the police report to support his claim of actual innocence, arguing that the report shows that the investigating officer knew that "Todd McBride was living with Hugill in Hugill's home." (Objection, Dkt. 38 at 2). To the contrary, the officers reported meeting with Petitioner after the incident "at Kolbet Automotive, 344 1st Street, where he lives in his brown 76 Dodge van, license 2L5105." (E-1 at 18.)

> In addition, Petitioner's own handwritten statement says:
> Petitioner points to the police report to support his claim of actual innocence, arguing that the report shows that the investigating officer knew that "Todd McBride was living with Hugill in Hugill's home." (Objection, Dkt. 38 at 2). To the contrary, the officers reported meeting with Petitioner after the incident "at Kolbet Automotive, 344 1st Street, where he lives in his brown 76 Dodge van, license 2L5105." (E-1 at 18.)
> In addition, Petitioner's own handwritten statement says:
>         It was 6:45 PM Dec. 31, 2003, I'm going to a Friend's house. It is New Year's Eve, I'm stopping to pick up three Wine Coolers to take with me, one to give to my Girlfriend Rose. It is her house. (I'm going to.)

bring forward evidence that he was innocent of the aggravated battery charge, which he has not done.

Petitioner next argues that if he did not commit a burglary, then he could not have had an intent to commit aggravated battery. However, the "intent to commit a felony at the time of entry," (the felony being aggravated battery, in these circumstances) is an element of the crime of burglary (I.C. § 18-401), not an element of aggravated battery (I.C. §§ 18-903(a)(b) and 18-907(a)). Petitioner is mistaken in believing that, for the aggravated battery, he had to form the intent to commit the battery *at the time Petitioner entered the apartment*.

Petitioner also argues that his innocence is shown by the fact that the first trial resulted in a hung jury on the aggravated battery charge, and that the burglary charge was dismissed during that trial. This set of circumstances does not, however, show Petitioner's actual innocence. That the jury could not agree on aggravated battery the first time does not prove Petitioner's innocence. Rather than showing all jurors agreed there was not sufficient evidence, which would have resulted in acquittal, at least one juror would have found Petitioner guilty. The standard for a showing of actual innocence to excuse

---

(State's Lodging A-4 at 30.) Further, after the incident, Petitioner admits he went back to his van and took a sleeping pill and went to bed. (*Id*. at 36.) These statements indicate that Petitioner lived in his van, not at Rose's apartment, at the time of the incident.

At trial, Petitioner testified that he had been staying at Rose Birch's apartment, but "moved out" on December 17 when he and Rose had some disagreements. After December 17, he stayed at the apartment five or six times, with the last time being on December 28, two days before the incident. (State's Lodging A-2 at 202.) Thus, even by Petitioner's own testimony, at the time of the incident, Petitioner was living in his brown van in the parking lot of an automotive store.

procedural default is that *no* reasonable juror would have found Petitioner guilty of the aggravated battery. *See Van Buskirk v. Baldwin*, 265 F.3d at 1084.

At the change-of-plea hearing, Petitioner admitted that there were facts sufficient to support a conviction of aggravated battery. (State's Lodging A-2 at 242-245.) Petitioner now argues that the fight with Todd occurred because Todd attacked Petitioner, and Petitioner was merely defending himself. (Dkt. 49 at 4.) Petitioner argues that "there was no intent to commit a crime when [he] defended himself." (Dkt. 49 at 5.)

The evidence presented at the first trial and in the police report does not support Petitioner's innocence to the extent that it is more likely than not that no reasonable juror would have found Petitioner guilty of the aggravated battery in the face of his "self-defense" argument. The report shows that when police officers met with Petitioner after the comatose victim was found, Petitioner had a small amount of blood on his shoe, pants, and hand. Petitioner was intoxicated and told Officer Grimes that Petitioner had hit the victim, but Petitioner then recanted his story. (State's Lodging E-1 at 1.)

The report notes that several people reported to police that Petitioner had admitted being involved in the incident. Petitioner's ex-wife stated that Petitioner told her "he killed somebody last night." (*Id*. at 20.) Michael Meissner reported that Petitioner told him "he beat the sh– out of [the victim]." (*Id*. at 1.) At trial, these people testified consistently with each other and with the police report.

Petitioner later repeated to Detective Cowley the conversation he had had with Meissner:

> Todd [the victim] then came over to where Dennis [Petitioner] was standing and pushed him at which point Dennis hit Todd with a fist in the face. Dennis did not remember much after that about the fight other than hitting Todd in the face[,] Todd fell down and Dennis kicked him in the head. The next thing that Dennis remembers is that he was at Mike's house and told him that he had just kicked the sh– out of Todd.

(*Id.* at 21.)

No witnesses testified that Petitioner claimed the privilege of self-defense in the incident. Petitioner did not tell Officer Grimes that the altercation resulted from self-defense. (State's Lodging E-1, A-2 at 46.) Petitioner's ex-wife did not recall that Petitioner ever stated he felt threatened by the victim or that Petitioner was defending himself; rather, Petitioner had said he beat the victim because the victim had abused a child. (State's Lodging A-2 at 101-104.)

Detective Cowley testified that Mr. Hugill did not say anything about being afraid of or threatened by the victim, and that Petitioner did not indicate he was defending himself. (*Id.* at 136-137.) Petitioner did mention that he "had threatened the victim a couple of times with physical harm if he didn't quit picking on the little boy or physically abusing the little boy." (*Id.* at 136.)

At trial, Petitioner testified that he did not kick the victim, but that he struck the victim with his fist after the victim first struck him. (*Id.* at 206-207.) Petitioner testified that he left the victim conscious, sitting upright on the floor. (*Id.* at 207, 218.) Teresa

Jarvis testified that the victim was lying down in a pool of blood when he was found. (*Id.* at 56.) Officer Grimes wrote in the police report that, upon responding to the call for help, he, Officer Inglet, and Sergeant Hansen found the victim "laying on the living room floor unconscious, bleeding from the mouth and nose." (State's Lodging E-1 at 1.)

To qualify for the actual innocence exception, Petitioner must show that, based on all of the evidence, it is more likely than not that no reasonable juror would have found Petitioner guilty of the aggravated assault. *See Van Buskirk v. Baldwin*, 265 F.3d at 1084. The evidence presented at trial was sufficient to support at least one reasonable juror's finding of guilt under the circumstances, as Petitioner's version of events significantly deviated from the testimony of other witnesses and from admissions Petitioner made on or near the date of the incident. As a result, the Court concludes that Petitioner has not made a sufficient showing of innocence to warrant application of an exception to the procedural default rule.

## OTHER PENDING MOTIONS

Several other motions filed by Petitioner are also pending. Petitioner's Motion for Extension of Time to File Response (Dkt. 46) will be granted. Petitioner's Response (Dkt. 49), filed on May 27, 2011, has been fully considered.

Petitioner's Motion to Refile an Appeal to the Supreme Court (Dkt. 50) will be denied. Petitioner was afforded an adequate direct appeal in this case. Because there is no constitutional right to post-conviction relief, this Court cannot order the Idaho Supreme

Court to re-open Petitioner's appeal time in the post-conviction matter. Petitioner must pursue that request in the Idaho Supreme Court.

Petitioner's Motion for a Certificate of Appealability (Dk. 51) will be denied, as explained below.

## CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, and in the interest of conserving time and resources, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed a petition or claim on procedural grounds, in addition to showing that the petition "states a valid claim of the denial of a constitutional right," as

explained above, the petitioner must also show that reasonable jurists would find debatable whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484.

Here, the Court has dismissed Petitioner's claims on procedural grounds. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the procedural issues and that the issues presented are not adequate to deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court, and simultaneously file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b), **within thirty (30) days after entry of this Order**.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion to Dismiss (Dkt. 36) is GRANTED. The Petition for Writ of Habeas Corpus is DISMISSED with prejudice.
2. The Court will not grant a Certificate of Appealability in this case. If Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to forward a copy of this Order, the record in this case, and Petitioner's notice.

3. Petitioner's Motion for Extension of Time to File Response (Dkt. 46) is GRANTED. The Response (Dkt. 49) has been filed and is considered timely.

4. Petitioner's Motion to Refile an Appeal to the Supreme Court (Dkt. 50) is DENIED.

5. Petitioner's Motion for a Certificate of Appealability (Dk. 51) is DENIED.

DATED: **January 10, 2012**

/s/ B. Lynn Winmill

Honorable B. Lynn Winmill
Chief U. S. District Judge